Filed 1/9/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| VENICE COALITION TO PRESERVE UNIQUE COMMUNITY CHARACTER et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF LOS ANGELES et al., <br><br> Defendants and Respondents. | B285295 <br><br> (Los Angeles County Super. Ct. No. BC611549) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Yvette M. Palazuelos, Judge.  Affirmed.

Venskus & Associates, Sabrina Venskus, Elise Cossart-Daly; Wittwer Parkin, William P. Parkin and Pearl Kan for Plaintiffs and Appellants.

Michael N. Feuer, City Attorney, Terry P. Kaufmann Macias, Assistant City Attorney, Amy Brothers and Patrick Hagan, Deputy City Attorneys for Defendants and Respondents.

## INTRODUCTION

Appellants Venice Coalition to Preserve Unique Community Character and Celia R. Williams alleged in a complaint filed in Los Angeles County Superior Court that the City of Los Angeles engaged in a pattern and practice of illegally exempting certain development projects in Venice from permitting requirements in the Venice Land Use Plan and in the California Coastal Act. The trial court granted summary judgment as to all causes of action, and Venice Coalition, et al., appeal. As we find that the City is entitled to judgment as a matter of law, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2016, appellants Venice Coalition to Preserve Unique Community Character and Celia R. Williams (Venice Coalition) filed a complaint for declaratory and injunctive relief against respondents the City of Los Angeles and Department of City Planning for the City of Los Angeles (City). The complaint alleged violations of due process under the California Constitution, and violations of the California Coastal Act (Coastal Act), the Venice Land Use Plan (LUP), and the California Code of Civil Procedure. The first cause of action alleged the City engaged in a pattern and practice of approving development projects without affording the community an opportunity for notice and a hearing. The second cause of action alleged the City failed to ensure all development projects complied with the requirements of the LUP. The third cause of action alleged the City acted in excess of its authority by issuing exemptions from the California Coastal Act's requirement that development projects obtain Coastal Development Permits (CDP's). The fourth cause of action alleged the exemptions granted by the City

2

were unauthorized under Public Resources Code section 30610[1] of the Coastal Act.  The fifth cause of action asked the court to enjoin the City from using taxpayer funds to illegally issue permitting exemptions.

The City filed a motion for judgment on the pleadings, which the trial court denied.  The City then filed a motion for summary judgment, which the trial court granted.

Venice Coalition timely appealed the court's grant of summary judgment as to the first, second, fourth, and fifth causes of action.  Venice Coalition is not challenging the grant of summary judgment as to the third cause of action.

## DISCUSSION

### A.    Standard of review

We review a trial court's grant of summary judgment de novo, "considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.  (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

Summary judgment is warranted if all the papers submitted show that there is no triable issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  A motion for summary adjudication shall be granted only if it completely

---

[1]     All further statutory references are to the Public Resources Code unless otherwise indicated.

3

disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty.  (*Id.*, subd. (f)(1).)

The moving party "bears the burden of showing the court that the plaintiff 'has not established, and cannot reasonably expect to establish, a prima facie case.' "  (*Miller v. Department of Corrections, supra,* 36 Cal.4th at p. 460.)  The burden then shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff " ' "may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action." ' "  (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.)

**B.    Regulatory Background**

The City employs two different, but parallel, processes to approve or deny all development projects in the Venice community.  One involves the Venice specific plan which governs all development in Venice.  The other process is pursuant to the Coastal Act, with which all development in Venice must also comply.  To comply with the specific plan, all development projects in Venice must either undergo a project permit compliance review, or a determination that a review is not required.  To comply with the Coastal Act, all development projects in Venice must obtain a CDP or an exemption from the CDP requirement.

1.    *The Coastal Act*

The California Coastal Act of 1976 is a comprehensive scheme governing land use planning for the entire coastal zone of California.  (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 793 (*Pacific Palisades*).)  The broad goals of the Coastal Act are permanent protection of the

4

state's natural and scenic resources; protection of the ecological balance of the coastal zone; and regulation of existing and future developments to ensure consistency with the policies of the Coastal Act. (§ 30001.) With certain exceptions, "any person wishing to perform or undertake any development in the coastal zone must obtain a coastal development permit 'in addition to obtaining any other permit required by law from any local government or from any state, regional, or local agency. . . .' " (*Pacific Palisades,* at p. 794; § 30600, subd. (a).) The Coastal Act authorizes exemptions from the CDP requirement for certain minor developments such as improvements to existing single family residences and other structures. (§ 30610.)

The Coastal Act requires local governments to develop local coastal programs,which consist of a land use plan and a local implementation plan. (*Pacific Palisades, supra,* 55 Cal.4th at p. 794.) "Once the California Coastal Commission certifies a local government's program, and all implementing actions become effective, the commission delegates authority over coastal development permits to the local government." (*Ibid.*) Prior to the certification of its local coastal program " 'a local government may, with respect to any development within its area of jurisdiction . . . , establish procedures for the filing, processing, review, modification, approval, or denial of a coastal development permit.' " (*Ibid.*) Actions pursuant to a locally issued CDP are appealable to the Coastal Commission. (*Ibid.*)

In 1978, the Coastal Commission granted to the City the authority to issue both CDP's for development within the Coastal Zone and exemptions for development projects that do not require a CDP under the Coastal Act. The City's CDP program is

5

codified in section 12.20.2 of the Los Angeles Municipal Code. In 2001, the Coastal Commission certified the Venice LUP. The City submitted a Venice local implementation plan to the Coastal Commission in 2004; as of yet, the implementation plan has not been certified.

      2.     *The Venice Land Use and Specific Plans*

The certified Venice LUP is a part of the City's general plan, which guides the City's use of land and the design and character of buildings and open space. One of the goals of the LUP is to control building heights and bulks to "preserve the nature and character of existing residential neighborhoods."

In 2003, the City Planning Commission approved the amended Venice specific plan at a public hearing. The specific plan is an ordinance developed to implement the policies of the LUP; specifically, the specific plan regulates "all development, including use, height, density, setback, buffer zone and other factors in order that it be compatible in character with the existing community and to provide for the consideration of aesthetics and scenic preservation and enhancement, and to protect environmentally sensitive areas." The specific plan sets forth two processes by which a development project may be evaluated and approved. For many small-scale development projects, such as construction and demolition of four unit or smaller residential projects not located on walk streets,[2] the Director of Planning may issue a "Venice Sign-Off" (VSO), which

---

[2]     A "walk street" is a "public street in the Coastal Zone and/or beach area that has been improved for public pedestrian use over part of its width and is landscaped . . . over the remainder, but which has not been improved for vehicular access."

exempts the project from a project permit compliance review.  All other projects must be evaluated for project permit compliance.

## C.    First Cause of Action: The VSO Process is Ministerial

The first cause of action alleged the City denied Venice residents due process by issuing VSO's without notice and a hearing.  The City countered that the VSO process is ministerial and therefore does not trigger due process protections.  The trial court agreed with the City, as do we.

Local governments take three types of actions in land use matters: legislative, adjudicative, and ministerial.  (*Calvert v. County of Yuba* (2006) 145 Cal.App.4th 613, 622.)  Legislative actions "involve the enactment of general laws, standards or policies, such as general plans or zoning ordinances."  (*Ibid.*)  Adjudicative actions "involve discretionary decisions" that apply laws to specific development projects such as zoning permits.  (*Ibid.*)  "Ministerial actions involve nondiscretionary decisions based only on fixed and objective standards, not subjective judgment; an example is the issuance of a typical, small-scale building permit."  (*Ibid.*)

The federal and state Constitutions prohibit the government from depriving persons of property without due process of law.  (U.S. Const., 5th Amend.; Cal. Const., art. I, § 7, subd. (a).)  Adjudicative governmental actions that implicate significant or substantial property deprivation generally require the procedural due process protections of reasonable notice and an opportunity to be heard.  (*Calvert v. County of Yuba, supra,* 145 Cal.App.4th at p. 622.)  Legislative action generally does not require due process protections because "it is not practical that everyone should have a direct voice in legislative decisions; elections provide the check there."  (*Ibid.*)  Ministerial actions do

7

not generally trigger due process protections because they are "essentially automatic based on whether certain fixed standards and objective measurements have been met." (*Id.* at p. 623.) In other words, land use decisions that require a public official to exercise judgment are discretionary and require notice and a hearing. Actions which require a public officer to perform "in a prescribed manner in obedience to the mandate of legal authority" without regard to his or her own judgment are ministerial and do not trigger due process protections. (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 501.)

Here, section 8A of the Venice specific plan provides that the Director of Planning may issue a VSO to certain projects upon a determination that they are exempt from project permit compliance review. Section 8A lists several types of projects eligible for VSO's, including improvements to existing single- or multiple-family structures not located on a walk street; new construction of one single-family unit and not more than two condominium units not located on a walk street; new construction of four or fewer rental units, not located on a walk street; and demolition of four or fewer units. Once the Director of Planning determines that a project is eligible under one of these categories, he or she must then determine whether it meets certain fixed development requirements applicable to the neighborhood in which the proposed project lies. These requirements include maximum height, maximum density, and minimum yard setback measurements. The Director of Planning uses forms that are essentially checklists requiring only a determination that the proposed project does or does not meet objective measurement criteria.

Sections 8B and 8C of the Venice specific plan, however, govern development projects not subject to VSO approval and therefore subject to project permit compliance review. Under section 8C, the Director of Planning must make certain findings, including that the project "is compatible in scale and character with the existing neighborhood, and . . . not be materially detrimental to adjoining lots or the immediate neighborhood."

We agree with the City and the trial court that the VSO process is ministerial. The Director of Planning is not required to exercise independent judgment; he or she only reviews a set of fixed, objective construction measurements. In contrast, the project permit compliance review in section 8C requires the Director of Planning to exercise independent, subjective judgment as to whether the project is generally compatible with the character of the existing neighborhood.

Venice Coalition also argues that, by its nature, the VSO process cannot be ministerial because each project must be reviewed for compliance with the LUP. As discussed in the next section, Venice Coalition contends that the LUP mandates that all projects, including those granted a VSO, must conform to the character of the existing community; as such, project approval must involve a discretionary decision that cannot be adequately captured in a checklist. Because we agree with the court and the City that VSO projects do not need to be separately reviewed for compliance with the LUP, and because we agree that the VSO process is ministerial, we conclude that for VSO projects the Venice Coalition is not entitled to notice and a hearing.

9

**D. Second Cause of Action: The Director of Planning is Not Required to Review VSO Projects for Compliance with the LUP**

Venice Coalition argues that the Director of Planning must conduct a discretionary analysis of every VSO to ensure it is compliant with the LUP. Venice Coalition points to language on the cover of the Venice specific plan stating "[p]lease refer to the certified Venice Coastal Land Use Plan for other development standards that may apply to your project" and language in the LUP stating new development must respect the "scale and character of community development," the "massing and landscape of existing residential neighborhoods," and must identify, protect, and restore the "historical, architectural and cultural character of structures and landmarks."

Venice Coalition has not identified any ordinance, municipal code provision, or statute requiring the Director of Planning to independently review small-scale VSO projects for compatibility with the LUP. Moreover, in 2003, the City Planning Commission previously determined that the amended specific plan complies with the LUP. The amended Venice specific plan was developed in response to the City Council's direction to the planning staff to update the specific plan to ensure consistency with development standards in the LUP, including lot consolidation, roof structures, maximum height, yard setback, and parking.

Accordingly, we agree with the City that VSO projects that are consistent with specific plan standards are necessarily consistent with LUP policies.

10

Furthermore, any challenge to the VSO process as embodied in the specific plan is time-barred. Section 65009(c)(1)(A) of the Government Code sets a 90-day statute of limitations to "attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a general or specific plan." Venice Coalition claims it is not attacking the Venice specific plan itself, its adoption, or the City's determination that the specific plan is consistent with the LUP. Rather, Venice Coalition claims it is only challenging the City's ongoing failure to ensure that VSO projects "respect the scale, massing, character, and landscape of existing neighborhoods" as required by the LUP.

This argument, however, is an attempt to recast what is essentially a challenge to the specific plan itself as being inconsistent with the LUP. In 2003, the City previously determined that the ministerial process outlined in the specific plan was consistent with the LUP. Thus, as set out above, compliance with the specific plan is compliance with the LUP. Consistent with that 2003 determination, the specific plan contains no language requiring the Director of Planning to independently review specific plan projects for compliance with the LUP. Arguing that the Director of Planning must nonetheless conduct such an independent review is tantamount to arguing that the City was wrong. This argument should have been brought to the attention of the City within the statutory time limitation.

Moreover, besides being unnecessary, it would not be feasible to impose a duty on the City to review VSO projects for compliance with the LUP without altering the specific plan itself. Venice Coalition is essentially aiming to convert the ministerial

11

VSO process, which the City already authorized as compliant with the LUP, into a discretionary one by imposing an additional duty on the Director of Planning that the City did not contemplate. In other words, the remedy Venice Coalition urges would require an alteration of the specific plan, which is tantamount to an attack on the specific plan itself. Again, any attempt to do so should have been presented within the statutory time limitation.

Finally, if a project receives VSO approval, it still must get a CDP. Venice Coalition does not dispute that the City applies LUP policies as part of the CDP process, which is discretionary. The Municipal Code requires the City to find that development projects conform to Chapter Three of the Coastal Act. (L.A. Mun. Code, § 12.20.2(G)(1)(a).) Among the requirements in Chapter Three is the mandate that development be "sited and designed to protect views to and along the ocean and scenic coastal areas, to minimize the alteration of natural land forms, to be visually compatible with the character of surrounding areas, and, where feasible, to restore and enhance visual quality in visually degraded areas. (§ 30251.) Therefore, the City ultimately does end up evaluating specific plan projects for compliance with the LUP. We see no reason why the City should be compelled to undergo this process again and again.

## E. Fourth Cause of Action: Additions to Existing Structures are Eligible for Exemptions Under the Coastal Act

Venice Coalition alleged in the fourth cause of action that, in violation of the Coastal Act, the City was issuing exemptions from the CDP process for additions to existing buildings and demolitions ordered as part of a nuisance abatement order.

Venice Coalition argued that section 30610 only allows for "improvements" to existing structures, not additions. On appeal, Venice Coalition argues not that all additions are disallowed by the Coastal Act, but that improvements that increase the existing height or floor area by more than 10 percent are impermissible in all areas of the Coastal Zone. Not so.

Venice Coalition points to sections 13250, subdivision (b)(4) and 13253, subdivision (b)(4) of title 14 of the California Code of Regulations for the proposition that no improvements to existing structures that increase floor area or height by more than 10 percent are allowed in the entire coastal zone. The language of these regulations, however, is as follows: "[o]n property not included in subsection (b)(1) above[3] *that is located between the sea and the first public road paralleling the sea or within 300 feet of the inland extent of any beach or of the mean high tide of the sea where there is no beach, whichever is the greater distance, or in significant scenic resources areas as designated by the commission or regional commission,*" CDP's are required for improvements that would increase the internal floor area of an existing structure by 10 percent or more, improvements of 10 percent or less where an improvement to the structure had previously been undertaken pursuant to section 30610, subdivisions (a) or (b), and increases in height by more than 10 percent of existing

---

[3] Subdivision (b)(1) of sections 13250 and 13253 of title 14 of the California Code of Regulations provides that CDP's are required for all improvements to a single-family structure located on a beach, wetland, seaward of the mean high tide line, on environmentally sensitive habitat area, an area designated as highly scenic in a LUP, or within 50 feet of the edge of a coastal bluff.

13

structures.  (Italics added.)  With respect to existing single-family residences in the specific areas described above, CDP's are also required for any significant non-attached structures such as garages, fences, shoreline protective works, or docks. (Cal. Code Regs., tit. 14, § 13250, subd. (b)(4).) The plain language of the regulation makes clear that the 10 percent limitation applies only to property within a certain proximity to the sea or in a designated scenic resource area.  Venice Coalition points to no language in the regulations or elsewhere limiting the size of improvements to structures in other parts of the coastal zone.

Furthermore, the language of these regulations, which were enacted to carry out the provisions of section 30610, subdivision (a), confirms that the Coastal Act contemplates that improvements to existing structures would include additions. Were it otherwise, the regulations would disallow all improvements that increase the size of an existing structure rather than limiting those in certain specified coastal areas to less than 10 percent.  Finally, Charles Posner, Supervisor of Planning for the Coastal Commission, stated in a sworn declaration that Commission staff approves the City's issuance of exemptions for additions to existing structures.

With respect to demolitions ordered as part of a nuisance abatement order, Venice Coalition does not argue this issue on appeal.  Nonetheless, we agree with the trial court's determination that no provision of the Coastal Act limits the City's power to abate nuisances and order demolition of unsafe or substandard conditions.  To the contrary, the Coastal Act explicitly provides that no provision in the Act can limit "the power of any city or county or city and county to declare, prohibit, and abate nuisances."  (§ 30005, subd. (b).)

14

Venice Coalition also argues on appeal that the City fails to provide notice of many of the exemptions in violation of the Coastal Act.  Venice Coalition did not, however, raise this issue in the trial court, nor did they include the underlying facts to support this allegation in their separate statement of facts opposing summary judgment.  We therefore decline to address the issue here.  (*City of San Diego v. Rider* (1996) 47 Cal.App.4th 1473, 1493 [a party waives a new theory on appeal when it fails to include the underlying facts in the separate statement of facts in opposing summary judgment.].)

## F.     Fifth Cause of Action: Venice Coalition is Not Entitled to Injunctive Relief

The trial court granted summary judgment as to the fifth cause of action for injunctive relief because it was predicated on the success of the other claims.  An injunction is a remedy, not a cause of action.  Therefore, it may not be issued if the underlying causes of action are not established.  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 65.) As we affirm the court's grant of summary judgment as to the first, second, and fourth causes of action, we also affirm the court's grant of summary judgment as to the fifth cause of action.

## DISPOSITION

The judgment is affirmed.  The parties are to bear their own costs on appeal.

**CERTIFIED FOR PUBLICATION**

STRATTON, J.

We concur:

GRIMES, Acting P. J.

RUBIN, J.*

---

*     Presiding Justice of the Court of Appeal, Second Appellate. District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.