[No. A051578. First Dist., Div. Three. Sept. 30, 1991.]

SOCIAL SERVICES UNION, LOCAL 535, SEIU, AFL-CIO, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents.

1094

## COUNSEL

Van Bourg, Weinberg, Roger & Rosenfeld and Stewart Weinberg for Plaintiff and Appellant.

Louise H. Renne, City Attorney, Vicki A. Clayton, Deputy City Attorney, and Jonathan V. Holtzman for Defendants and Respondents.

## OPINION

**WHITE, P. J.**—Social Services Union Local 535, SEIU, AFL-CIO, appeals from a judgment denying its petition for a writ of mandate against respondents City and County of San Francisco (City), Civil Service Commission (Commission) and Department of Social Services (Department), asserting a violation of the San Francisco City Charter (the Charter) and the civil service rules of the Commission, in the manner in which the Commission had conducted a civil service qualifying examination for several positions of City employment. We affirm.

### FACTS

The basic facts are not in dispute. On March 16, 1990, the City posted a notice of employment opportunity for the position of assistant director, social services classification number 2969. The notice announced a "combined promotive and entrance" examination for the position. There were eight vacancies to be filled in this particular classification position, some for social service programs and the rest for income maintenance programs.

According to the announcement, the duties of the advertised position included responsibility for the organization and administration of income maintenance or social services programs; planning, coordinating and directing budget preparation; policy and regulation development; allocation of personnel; and maintenance of effective standards of operation and practice

for the programs. This position was described by a personnel officer for the Department as "a top level management position" which was "three steps down from the general manager's position," and which was responsible for "major programs throughout the department, . . ."

The listed "minimum qualifications" for the position were a master's degree from an accredited college or university in social work, public administration, business administration, social science, or a closely related field, and three years of management level administrative experience in a "multi-function" human service agency; or, in the alternative, a bachelor's degree from an accredited college or university and five years of the same kind of management level administrative experience. The announcement stated that receipt of applications would begin on March 16, 1990, and continue until April 6, 1990, although that period might be extended.

In the section of the announcement entitled "Examination," prospective applicants were notified that a preliminary "screening committee" would appraise the qualifications of persons meeting "the minimum requirements," and that only persons approved by the screening committee would be permitted to take the examination. "A screening committee will evaluate the qualifications of applicants who meet the minimum requirements. A group of approximately 24 of the highest ranking candidates will be selected to participate in an Assessment Center. The screening committee will evaluate applications and supplemental applications based on job-related factors including but not limited to related education, training and work experience. Applicants meeting the minimum qualifications, therefore are not guaranteed advancement to the Assessment Center. The decision of the screening committee is final."

The announcement stated that "[q]ualified candidates" would "be notified of the exact time, date and place to report for the examination." The "Assessment Center" or actual examination was described as follows: "The examination will consist of a variety of testing techniques (job simulation exercises) designed to allow you the opportunity to demonstrate, under standardized conditions, the skills determined to be important for success as an Assistant Director, Social Services Program. (Additional information about the examination will be provided to applicants who are invited to participate)."

Under the format set forth in the announcement, therefore, meeting the minimum qualifications would not assure an applicant of the opportunity to take the examination at the assessment center. An applicant for a position would first have to be adjudged "qualified" by the screening committee.

There were no appeals filed from the announcement of the combined promotive and entrance examination within seven business days of the issuance of this announcement, as required by Civil Service Commission rule 9, section 9.03,[1] dealing with protests of examination announcements.[2] The screening committee met on May 22, 1990, to evaluate the applications of 50 qualified candidates. The members of the screening committee were Cleveland S. Edwards, the chief deputy director of the Department of Social Services in San Joaquin County; Anne Bersinger, the chief, Administrative Division of the California Department of Motor Vehicles; and Claude E. Finn, the deputy general manager of the Department of Social Services in the City. Also present at the meeting was the analyst in charge of administering the examination.

As had been announced beforehand, the screening committee selected a group of 24 individuals out of the 50 qualified applicants to go on and take the assessment center examination for the positions. Thereafter, appellant, as well as several individuals who were not selected by the screening committee to take the examination, submitted protests to the personnel office of the Department of Social Services in May and June of 1990.

Appellant's formal protest objected to the use of the screening committee on the following grounds: (1) the screening process set forth in the announcement "has no basis in Civil Service rules"; (2) the screening process denied applicants their due process rights because the identity of the members of the screening committee was not made public, screening criteria were unstated, and there was no right of appeal from a decision of the screening committee; and (3) "it was highly inappropriate" for Claude Finn, deputy general manager of the Department of Social Services, to serve on the screening committee. Appellant took the position that "the integrity of the current 2969 examination has been severely compromised and . . . this examination should be cancelled."

---

[1] All further references to rules are to the rules of the Commission.

[2] Rule 9, section 9.03 states as follows: "Appeals concerning the provisions of an announcement must be received by the Civil Service Department within seven (7) business days from the issuance date. The General Manager, Personnel, will rule upon appeals and notify petitioners in writing. This decision is subject to appeal to the Commission under Rule 5, Section 5.06."

Rule 5, section 5.06, in turn, provides: "An action by the General Manager, Personnel, on examination matters delegated to the General Manager, Personnel, may be appealed to the Commission provided such appeal is received in the Civil Service Department before 12 Noon on the fifth (5) working day (excluding Saturdays, Sundays, and Holidays) following the postmarked mailing date of notification to the appellant. The Commission's action on the appeal shall be final and no reconsideration request shall be allowed."

In a letter dated June 1, 1990, Richard Hodgkinson, a personnel analyst for the Department, responded to the protest of one of the individual applicants. In his letter, Hodgkinson stated that screening panels were not governed by rule 9, and that there were no provisions for listing the names of the members of the screening committee, or for challenging particular members. Nevertheless, despite the fact that none of the protests or appeals had been timely filed in accordance with rule 9, these protests were formally considered by the Commission on June 18, 1990.

At the hearing before the Commission on that date, appellants acknowledged they had not filed a timely appeal in accordance with rule 9, stating, "[u]nfortunately, it was delayed." Appellants also conceded they had no evidence of any bias or prejudice in the way the screening committee operated or on the part of any member of the screening committee; that they were not objecting to the individual results of the screening process but to the process itself; and that they did not challenge the qualifications of any applicants passed by the screening committee.

 ▬ ▬ After hearing the arguments of appellant's representative, reviewing the actions and rankings of the screening committee, and considering the recommendation of Mary G. Smith, the senior personnel officer for the Department, the Commission denied the appeals, finding no evidence of bias, prejudice or impropriety on the part of any member of the screening committee or in any of the decisions of the committee on individual applicants.[3]

---

[3]Respondent City has asked that we take judicial notice of the minutes of a subsequent Commission meeting on November 19, 1990, at which the Commission discussed the substantive issues in this case. The minutes reflect that it "unanimously ratified and confirmed" the screening committee's decision. This meeting took place *after* the trial court judgment denying appellant's petition for writ of mandate, which was entered on October 22, 1990, and after the filing of the notice of appeal herein on November 5, 1990. Because of the timing of the meeting, appellant urges that we should not take judicial notice of the minutes of the meeting.

The official minutes of the Commission meeting itself are clearly a matter of which we can take judicial notice (Evid. Code, § 452; *Agostini v. Strycula* (1965) 231 Cal.App.2d 804, 806 [42 Cal.Rptr. 314]), and we do so take judicial notice of those minutes. Our decision in this appeal is not influenced or affected by any actions of the Commission made after the judgment below, including any action taken at the meeting of November 19, 1990.

### DISCUSSION

■ Appellant contends that under the City's Charter, the Commission has the exclusive authority and responsibility to determine the eligibility of persons applying for civil service positions in the City government, and that this responsibility may not be delegated to the screening committee as was done in this case. We disagree.

The Charter sets forth the general powers and duties of the Commission and its responsibilities over the examination process. In section 3.661, subdivision (a), the Charter provides in pertinent part as follows: "*The civil service commission shall be the employment and personnel department of the city and county and shall determine appointments on the basis of merit and fitness, as shown by appropriate tests. . . .* [¶] *The commission shall adopt rules to carry out the civil service provisions of this charter and, except as otherwise provided in this charter, such rules shall govern applications; examinations; eligibility*; duration of eligible lists; *certification of eligibles*; appointments; promotions; transfers; . . . the filling of positions, temporary, seasonal and permanent; classification; . . . *and such other matters as are not in conflict with this charter. . . .* The secretary may certify eligibles and payrolls and conduct examinations under the rules of the commission." (Italics added.)

Section 8.321 of the Charter deals with "Examination of Applicants" for places in the classified civil service. As pertinent to this appeal, this section provides: "*The commission shall control all examinations and may employ suitable persons in or out of the public service to act as examiners.* The examinations used shall measure the relative capacities of the persons examined to perform the functions, duties and responsibilities of the classification to which they seek appointment. *Examinations shall consist of selection techniques which will test fairly the relative qualifications, merit and fitness of the applicants for the position to be filled.*"

"Examinations *may include* written tests to determine job-related aptitude, knowledge, or achievements and oral tests by *qualifications appraisal boards.* The civil service commission shall establish rules governing the size and composition of qualification appraisal board [*sic*]. Qualification appraisal boards may consider, in the case of employees of the City and County of San Francisco, all prior performance evaluations completed on civil service forms and in the case of all applicants *may consider prior work experience, assessment center evaluations, and work samples as a part of their*

*evaluation of candidates for employment to any position. . . . The commission shall be the sole judge of the adequacy of the tests to rate the capacity of the applicants to perform service for the city and county. The commission may, for each examination,* establish a passing mark or may *determine the total number of persons who shall constitute the list of eligibles.* The commission shall prepare from the returns of the examiners the list of eligibles, arranged in order of relative performance." (Italics added.)

Pursuant to these Charter provisions, the Commission has adopted rules which delegate authority over the examination process to the general manager, personnel. Rule 3, section 3.04 provides that the general manager may "[d]elegate duties where necessary and supervise and direct the work of all persons . . . engaged in preparing, conducting, or scoring examinations"; "[d]etermine the minimum qualifications of applicants"; "[m]ake arrangements for and supervise the conduct of the examination, appointing experts, special examiners, and other persons as deemed necessary"; "evaluate the qualifications of applicants"; and "[p]ass upon all questions relating to the eligibility of applicants, . . . the admissibility of applicants to the examination, . . . and all questions arising during the course of an examination, subject to appeal to the Commission" as provided by rule 5, section 5.06, setting forth the procedure for appeal of the general manager's actions on examination matters. Rule 9, section 9.13 provides that the general manager "shall determine the total number of persons to be included on the list of eligibles based on the needs of the service."

Thus, the Charter charges the Commission with the control of all parts of the examination process, including the determination of "appropriate tests" and "selection techniques" to test the relative merit, fitness and qualifications of applicants; setting the number of persons to be included on the "list of eligibles"; certification of "eligibles"; and establishment of "qualifications appraisal boards." Under the Charter, the Commission is the "sole judge" of the manner applicants will be adjudged and the techniques employed to test their capacity. By the rules it has promulgated, in turn, the Commission has delegated the practical carrying out of these responsibilities to the general manager, personnel, and to such other persons as may be necessary to assist the general manager.

In our opinion, these provisions of the Charter and the Commission's rules provide adequate authority for the screening committee procedure used in this case. The record shows, and it is not in dispute, that the Commission had used this screening committee procedure for at least 15 years prior to the instant case. The use of such screening committees is not prohibited by any provision of the Charter; there is nothing in the Charter which would appear

to limit the Commission's authority to devise differing appropriate methods of administering the eligibility procedures for departmental examinations, or to delegate to select committees (such as the "qualification appraisal boards" specifically mentioned in the Charter) the authority to screen applicants for eligibility.

■ A City Charter operates as a limitation or restriction over all the municipal affairs which the City is assumed to possess; it is not a grant of power, and the enumeration of powers therein does not constitute an exclusion or limitation on the City's authority. Restrictions on the City's powers may not be implied; unless the Charter expressly prohibits it from exercising its authority in a manner not otherwise limited by state or federal law, the City retains the power to do so. (*Taylor* v. *Crane* (1979) 24 Cal.3d 442, 450-451 [155 Cal.Rptr. 695, 595 P.2d 129]; *City of Grass Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 598-599 [212 P.2d 894].)

■ An interpretation of a Charter provision by an administrative agency charged with its implementation is entitled to great weight and respect unless shown to be clearly erroneous. (*International Business Machines* v. *State Bd. of Equalization* (1980) 26 Cal.3d 923, 930-931, fn. 7 [163 Cal.Rptr. 782, 609 P.2d 1]; *American Hospital Supply Corp.* v. *State Bd. of Equalization* (1985) 169 Cal.App.3d 1088, 1092 [215 Cal.Rptr. 744].) An agency's interpretation must be upheld if it has a reasonable basis. (*Rible* v. *Hughes* (1944) 24 Cal.2d 437, 445 [150 P.2d 455, 154 A.L.R. 137]; *Searle* v. *City of Berkeley Rent Stabilization Bd.* (1988) 197 Cal.App.3d 1251, 1255 [243 Cal.Rptr. 449]; *Organization of Deputy Sheriffs* v. *County of San Mateo* (1975) 48 Cal.App.3d 331, 338-339 [122 Cal.Rptr. 210].) Moreover, judicial deference to an administrative construction is further encouraged by the absence of any challenge thereto over an extended period of time, as in the instant case. (*Steelgard, Inc.* v. *Jannsen* (1985) 171 Cal.App.3d 79, 88 [217 Cal.Rptr. 152]; *Killian* v. *City and County of San Francisco* (1978) 77 Cal.App.3d 1, 12 [143 Cal.Rptr. 430].)

■ Here, the Commission's interpretation of the Charter provisions dealing with the conduct of eligibility tests and examination procedures is presumptively lawful, and appellant has failed to show that it is clearly erroneous or unreasonable. Indeed, in view of the importance and responsibility of the managerial positions at issue, it is difficult to imagine how candidates could be evaluated and selected without some kind of screening process like that in use here.

There was no improper delegation of authority by the Commission to the general manager, personnel, or by the general manager to the Department.

Section 8.321 of the Charter expressly authorizes the Commission to employ "suitable persons in or out of the public service to act as examiners"; and it specifically permits the use of "qualifications appraisal boards" to consider such things as applicants' previous work experience, prior performance evaluations, and work samples "as a part of their evaluation of candidates for employment to any position." Thus, the Charter authorizes the Commission's delegation of the actual work of administering examinations and selecting eligibles to third parties, under the authority of the general manager, personnel.

We conclude that the use of screening committees by the Commission in evaluating persons to be included in the list of eligibles for examinations is neither a violation of the Charter, nor an improper delegation of the Commission's exclusive authority. In view of our decision on the substantive merits of appellant's appeal, we need not address the other procedural issues raised by the parties.

The judgment is affirmed.

Merrill, J., and Strankman, J.,* concurred.

---

*Presiding Justice of the Court of Appeal, First District, Division One, sitting under assignment by the Chairperson of the Judicial Council.