Filed 10/14/22 Modified and Cert. for Partial Pub. 11/14/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WILLIAM HOBBS et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>CITY OF PACIFIC GROVE et al.,<br><br>    Defendants and Respondents. | H047705<br>(Monterey County<br> Super. Ct. No. 18CV002411) |

This appeal by plaintiffs William and Susan Hobbs and Donald and Irma Shirkey asks us to hold that defendant City of Pacific Grove (the City)—by granting them one-year licenses to offer residential real properties for short-term vacation rentals—conferred a property right protected by the state and federal constitutions in the renewal of those licenses. The Hobbses have since sold their home, rendering their claims moot. In our independent judgment, we conclude the Shirkeys' claims are devoid of constitutional merit.

# I. BACKGROUND[1]

## A. *The Regulatory Framework*

For the first time in 2010, with the enactment of Pacific Grove Ordinance No. 10-001[2], the City allowed "transient use of residential property for remuneration," subject to licensing, taxes, and other regulation. Licenses were issued upon application for a period of one year, subject to earlier revocation for good cause. By January 2011, the City had licensed 85 active short-term rentals.

In 2016, the City capped the overall number of short-term rental licenses citywide at 250 and further established a density cap of "15 [percent] per block." (Ord. No. 16-007; Pacific Grove Mun. Code, former § 7.40.25.)[3]

In 2017, the City reaffirmed its 250-license citywide maximum, prohibited more than one license per parcel, and required a 55-foot buffer "zone of exclusion" between licensed properties. (Ord. No. 17-024; Mun. Code, § 7.40.040.) The 2017 ordinance included several provisions regarding renewal or revocation of short-term rental (SRT) licenses. "The City Manager or his/her designee may delay or deny issuance of an STR license for any reason." (Ord. No. 17-024; Mun. Code, § 7.40.060(g).) "No STR license shall be automatically renewed." (Ord. No. 17-024; Mun. Code, § 7.40.080.) "Any STR license issued pursuant to this Chapter may be withdrawn, suspended or revoked for any reason." (Ord. No. 17-024; Mun. Code, § 7.40.090.)

Each applicant for a license was required to affirm the following language: "I understand this license expires on March 31 each year, renewal of this license is not

---

[1] We take the facts in parts I.A and I.B. from the parties' separate statements of undisputed material facts, evidence admitted in conjunction with the motion for summary judgment, and admissions in the parties' briefs. (See *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1186, fn. 4.)

[2] Further references to "Ordinance" or "Ord." are to Pacific Grove ordinances.

[3] Further references to "Mun. Code" are to the Pacific Grove Municipal Code.

guaranteed, and the penalty for operation without a license is 100% forfeiture of rents received."

By early 2018, the City had in fact issued 289 short-term rental licenses, in excess of the 250-license maximum established in Ordinance 16-007 and, in certain areas, in excess of the 15 percent density limit.  Accordingly, in areas where short-term rental licenses exceeded the 15 percent cap per block, the City resolved to select licenses to "sunset" after a grace period following the scheduled expiration of their existing term. (Ord. No. 18-005, § 2.)  The City settled upon a random lottery as a "means to avoid substantive favoritism" in reducing the number of licenses "in a fair and equitable manner."

The City conducted the lottery in May 2018, selecting 51 licenses to sunset the following year.  These licenses would remain active past their existing term through April 2019, to afford licensees time to cease accepting new bookings and prepare the property for alternative uses, such as rentals for longer than 30 days.

On November 6, 2018, Pacific Grove voters approved Measure M, by which the City would prohibit and phase out, over an 18-month sunset period, all existing short-term rentals in residential districts, except in the City's "Coastal Zone," as defined by the California Coastal Act of 1976 (Pub. Resources Code, § 30103), which remained governed by Ordinance No. 18-005.  (Measure M, approved by Pacific Grove voters (Monterey Voter Information Guide, Gen. Elec. (Nov. 6, 2018)) (Measure M).)  Measure M did not restrict short-term rentals in nonresidential districts or otherwise modify "existing rules for bed and breakfast inns, motels, hotels, and other visitor lodging." Measure M also provided that "residents may allow short-term occupancy of their homes for home sharing, house swaps, house sitting, pet sitting, work trade, and similar arrangements[,]" which the voters deemed "compatible with residential uses."

Of the 51 licenses that had been selected by lottery to sunset under Ordinance No. 18-005, 22 were in the Coastal Zone.

3

**B.**     *Plaintiffs' Participation in Short-Term Rentals*

In 2013, Susan Hobbs inherited a single-family residence in Pacific Grove that her parents had purchased over 50 years ago. She and her husband, William Hobbs, made $50,000 in repairs and improvements to what was then "an unmaintained eyesore," before making it available for rent. They obtained a short-term rental license in 2013, which they renewed annually until 2019.

Donald and Irma Shirkey own a single-family home on 5th Street in Pacific Grove's Coastal Zone. They purchased the property in 1999 as a second home for their children and grandchildren to use when they visit. When their family is not visiting, the Shirkeys offer the home as a vacation rental in order to cover costs. They often rent it as a single unit and the City only required one short-term rental license when the property was first licensed in 2010. In 2017, the City required them to obtain a second short-term rental license for the separate guest quarters above the garage.

The license assigned to Donald and Irma Shirkey for their main property was chosen for nonrenewal; the license for the upstairs guest quarters in the Shirkey property was not.

Measure M has the effect of permanently prohibiting the short-term rental of the Hobbs property. The Shirkey property, in the Coastal Zone, remains subject to Ordinance No. 18-005.

**C.**     *Trial Court Proceedings*

Plaintiffs filed the operative first amended complaint for declaratory and injunctive relief in December 2018, alleging the City unconstitutionally deprived plaintiffs of "their right to allow guests to stay in their home."

In the first count, plaintiffs alleged that the City was required to obtain the California Coastal Commission's approval before adopting Ordinance No. 18-005. In the second count, plaintiffs alleged that Ordinance No. 18-005 violates plaintiffs' right to due process by arbitrarily limiting the number of homes that can be offered as short-term

4

rentals and by subjecting them to random selection for nonrenewal of licensure. Plaintiffs further allege that Measure M violates William and Susan Hobbs's right to due process by prohibiting all homes outside of the Coastal Zone from being offered as short-term rentals.

Plaintiffs moved for summary judgment or, in the alternative, summary adjudication of each count in the first amended complaint. The trial court issued an order granting summary adjudication as to count 1 and denying it as to count 2. As to count 1, the court declared that "Ordinance 18-005 constitutes development within the Coastal [Z]one, and the City needs to obtain approval by the California Coastal Commission . . . of a Local Coastal Program or obtain a Coastal Development Permit from the Commission"; as to count 2, the court determined that plaintiffs failed to "carry their burden of proof" on whether they "have a substantive or procedural due process right to renew the time-limited short-term rental licenses."

Plaintiffs then filed what they denominated a motion in limine to exclude all evidence except their 2018 short-term rental license applications[4] and to enter judgment in favor of defendants with respect to count 2. The trial court denied the motion.

Plaintiffs thereafter sought dismissal of count 2 with prejudice, citing *Ashland Chemical Co. v. Provence* (1982) 129 Cal.App.3d 790, 792-793 (treating order of dismissal on plaintiff's voluntary request as appealable). The trial court issued an order dismissing count two.

Plaintiffs timely appealed from the order of dismissal. Defendants cross-appealed from the trial court's order granting summary adjudication as to count one.

---

[4] The applications were attached as Exhibits 2 and 7 to the Declaration of Ben Harvey, City Manager, in Opposition to Plaintiffs' Motion for Summary Judgment or in the Alternative for Summary Adjudication.

## II.    DISCUSSION

**A.    *Preliminary Matters***

**1.    *Justiciability***

"It is well settled that an appellate court will decide only actual controversies and that a live appeal may be rendered moot by events occurring after the notice of appeal was filed. We will not render opinions on moot questions or abstract propositions, or declare principles of law which cannot affect the matter at issue on appeal." (*Daily Journal Corp. v. County of Los Angeles* (2009) 172 Cal.App.4th 1550, 1557.) Defendants' cross-appeal pertains only to count 1 of the operative complaint, by which plaintiffs challenge Ordinance No. 18-005 on the theory that it required Coastal Commission approval. After the trial court granted summary adjudication as to count 1, the Coastal Commission approved the City's Local Coastal Program, including Ordinance No. 18-005.[5] As both parties acknowledge, the Coastal Commission's approval of the City's Local Coastal Program, including the 2018 Ordinance, has rendered moot both the City's cross-appeal and count 1 in its entirety, warranting dismissal of both. We therefore dismiss the cross-appeal and will direct the trial court to dismiss count 1. (See *Monterey v. California Coastal Com.* (1981) 120 Cal.App.3d 799, 805, 807; *Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2011) 198 Cal.App.4th 939, 947.)

A further event impeding justiciability of plaintiffs' claims for declaratory and injunctive relief as to Measure M is the Hobbses' loss of standing by virtue of their sale

---

[5] We grant the City's unopposed request for judicial notice of (1) the March 11, 2020, minutes of the California Coastal Commission meeting; (2) the City's certified Implementation Plan codified in Pacific Grove Municipal Code section 23.90.220(c)(8). (Evid. Code, § 452, subd. (b); *Services Union v. City and County of San Francisco* (1991) 234 Cal.App.3d 1093, 1098, fn. 3, *Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1488, fn. 3.)

6

of the residence at issue.[6]  Plaintiffs' allegations in count 2 regarding the constitutionality of Measure M are predicated wholly upon the asserted injury to William and Susan Hobbs, by virtue of their ownership of a residential property outside of the Coastal Zone. "In California, the right to appeal civil actions is statutory.  [Citation.]  In order to exercise that statutory right, an appellant must have standing.  [Citation.]" (*In re Marriage of Burwell* (2013) 221 Cal.App.4th 1, 12.)  "To have appellate standing, one must (1) be a party and (2) be aggrieved." (*Ibid.*)  A party is " 'aggrieved' " if his or her rights or interest are injuriously affected by the judgment and the interest is "immediate, pecuniary, and substantial." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.) Moreover, the doctrine of mootness adds a durational requirement to standing: " ' " ' "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." ' [Citations.]" ' [Citation.]" (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1574.)

Due to the sale of their house, William and Susan Hobbs do not own property subject to Measure M and therefore are no longer affected by the trial court's ruling on the motion for summary adjudication.[7]  The only other plaintiffs, Donald and Irma Shirkey, also lack standing as to Measure M because their property is within the Coastal Zone and is not impacted by Measure M.  Because no plaintiff has an "immediate, pecuniary, and substantial" interest in the trial court's order with regard to Measure M, no plaintiff has standing to pursue an appeal with regard to Measure M.

---

[6] We grant the City's unopposed request for judicial notice of the grant deed documenting the sale of William and Susan Hobbs's property in Pacific Grove.  (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1382).

[7] Plaintiffs have asserted no claim for damages, only declaratory and injunctive relief.

7

We retain discretion to decide a moot issue if the case presents an issue of substantial and continuing public interest and is capable of repetition yet evades review. (*Citizens Oversight, Inc. v. Vu* (2019) 35 Cal.App.5th 612, 615.) Although we assume the issue presented by the electorate's 2018 approval of Measure M, with its one-time impact on short-term rental licenses, is capable of repetition, we have no reason to conclude that the requirement of an affected property owner's continued standing would cause a recurrence of the issue to evade review. We therefore limit our review to the Shirkeys' due process challenge to Ordinance No. 18-005.

### 2.    *Appealability*

The City contends that plaintiffs' appeal is not proper because it does not arise from a final judgment that disposes of all issues between the parties. We do not construe plaintiffs' voluntary dismissal of count two as forfeiting their right to appeal.

Typically, "an appeal cannot be taken from an order preliminary to judgment, even one that sounds the death knell for a lawsuit or severable portion thereof" (*Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 763) and "a plaintiff's voluntary dismissal is deemed to be nonappealable on the theory that dismissal of the action is a ministerial action of the clerk, not a judicial act." (*Stewart v. Colonial Western Agency, Inc.* (2001) 87 Cal.App.4th 1006, 1012 (*Stewart*).) Denial of plaintiffs' motion for summary adjudication signified only that they had not demonstrated their entitlement to relief without the need for a trial but remained free to litigate their claims at trial. (See Code Civ. Proc., § 437c, subd. (p)(1).)

But contrary to the City's contention, the dismissal here was not a ministerial act of the clerk of court, but a judicial act on plaintiffs' request over the City's written opposition.[8] "[A]ppellate courts treat a voluntary dismissal with prejudice as an

---

[8] Although the order of dismissal does not make clear that the trial court specifically intended to facilitate plaintiffs' appellate objective, had the court wished to foreclose appealability on the existing record, prior to the commencement of trial on the

appealable order if it was entered after an adverse ruling by the trial court in order to expedite an appeal of the ruling." (*Stewart*, *supra*, 87 Cal.App.4th at p. 1012 [voluntary dismissal to expedite appeal from order imposing discovery sanctions]; *Austin v. Valverde* (2012) 211 Cal.App.4th 546, 551 [voluntary dismissal of mandamus petition to expedite appeal from order denying request for free administrative hearing transcript]; *Goldbaum v. Regents of University of California* (2011) 191 Cal.App.4th 703, 708 [dismissal pursuant to settlement is appealable judgment permitting appeal from fee order].) Where, as here, the trial court exercised its discretion to grant plaintiffs' request to dismiss count 2 with prejudice, a request in which they signaled their intention to expedite an appeal they viewed as sounding purely in law, we see no utility in requiring the trial court to preside over further litigation as a precondition to plaintiffs' preservation of their claim for appeal. (See *Building Industry Assn. v. City of Camarillo* (1986) 41 Cal.3d 810, 817.) This is particularly so here, where the trial court in its denial of summary adjudication of count 2 stated that plaintiffs failed to carry their burden of establishing whether they "have a substantive or procedural due process right to renew their time-limited short-term rental licenses." The legal character of plaintiffs' interest in renewal of short-term rental licenses—as the City and amici have argued—is the linchpin to plaintiffs' constitutional claims.

That the order of dismissal stopped short of entering judgment as to count 1 similarly does not strike us—on this unique record and procedural history—as fatal to plaintiffs' appeal. (Cf. *Angell v. Superior Court* (1999) 73 Cal.App.4th 692, 697 ["one final judgment rule" generally requires deferral of appeal until final judgment in entire action].) Plaintiffs prevailed on their motion for summary adjudication of count 1. Although no judgment as to count 1 has since been entered, it appears that (1) the only

merits, it could have declined to enter dismissal, leaving plaintiffs to elect between trial and a purely ministerial dismissal—forfeiting the right to appeal—from the clerk of court. (Code Civ. Proc., § 581, subd. (b)(1).)

9

impediment to the entry of judgment as to count one was the anticipation of trial as to count 2; and (2) the City has since satisfied the requirement—as construed by the trial court—of obtaining Coastal Commission approval. To the extent the trial court's order of dismissal with prejudice as to count 2 omitted reference to count 1, we construe that omission as inadvertent, given the trial court's reliance on the plaintiff's proposed form of order, rather than an intention to reserve adjudication of count 1 for trial of factual issues unrelated to count 2. (See *Griset v. Fair Political Practices Commission* (2001) 25 Cal.4th 688, 700; *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 920- 921.) Moreover, because the parties agree the City's appeal as to count 1 is now moot, and because there remains nothing to adjudicate on that count here or in the trial court, it is difficult for us to discern the prejudice to which the City generically alludes.

We therefore turn to the merits of the Shirkeys' appeal relating to the trial court's denial of summary adjudication of count 2.

**B.     *Due Process***

Plaintiffs, in moving for summary adjudication of count 2, contended that their economic interest in renting their vacation homes exclusively for transient visitors was an entitlement subject to state or federal constitutional protection as a matter of law. To the extent they assert a "vested right" in that particular economic use of their real property, they have established neither right—beyond the expressly defined terms of their license—nor vesting on this record. Nor have they established that the City's curtailment of short-term rental licenses is so unrelated to legitimate state interests that it can be said to infringe on substantive due process.

**1.     *Legal Principles and Standard of Review***

Under the Fourteenth Amendment of the United States Constitution, the requirements of procedural due process apply to state action infringing liberty and property interests. (*Board of Regents of State Colleges v. Roth* (1972) 408 U.S. 564, 569.) The range of interests protected by due process, however, "is not infinite." (*Id.* at

10

p. 570.)  " 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.'  [Citation.]  Such entitlements are, ' "of course, . . . not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." '  [Citation.]"  (*Town of Castle Rock v. Gonzales* (2005) 545 U.S. 748, 756.)

Under article I, section 7 of the California Constitution, " '[t]he "requirement of a statutorily conferred benefit limits the universe of potential due process claims: presumably not every citizen adversely affected by governmental action can assert due process rights; identification of a statutory benefit subject to deprivation is a prerequisite." ' "  (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 855 (*Las Lomas*).)  Where such a statutory benefit exists, "[t]he procedures that are constitutionally required are those that will, without unduly burdening the government, maximize the accuracy of the resulting decision and respect the dignity of the individual subjected to the decisionmaking process."  (*Smith v. Bd. of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 327.)

Beyond the procedural rights, if any, implicated by government action, the substantive reasonableness of a governmental decision impacting private rights is not immune from constitutional scrutiny.  But " '[a] law regulating or limiting the use of real property for the public welfare does not violate substantive due process as long as it is reasonably related to the accomplishment of a legitimate governmental interest.' [Citations.]"  (*Guinnane v. San Francisco City Planning Commission* (1989) 209 Cal.App.3d 732, 741.)  " '[A]n ordinance restrictive of property use will be upheld, against due process attack, unless its provisions "are clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals or general welfare." ' [Citation.]"  (*Terminal Plaza Corp. v. City and County of San Francisco* (1986) 177

11

Cal.App.3d 892, 908.)  "Substantive due process protects against arbitrary government action.  [Citation.]  A substantive due process violation requires more than 'ordinary government error,' and the ' " 'arbitrary and capricious' " ' standard applicable in other contexts is a lower threshold than that required to establish a substantive due process violation.  [Citation.]  A substantive due process violation requires some form of outrageous or egregious conduct constituting 'a true abuse of power.'  [Citation.]" (*Las Lomas*, *supra*, 177 Cal.App.4th at pp. 855-856.)

We review de novo an order granting or denying summary adjudication:  "In practical effect, we assume the role of a trial court and apply the same rules and standards that govern a trial court's determination of a motion for summary judgment or summary adjudication.  [Citations.]" (*Romero v. Superior Court* (2001) 89 Cal.App.4th 1068, 1077.)  Because a ruling on the motion "involves pure questions of law, 'we are required to reassess the legal significance and effect of the papers presented by the parties in connection with the motion.' " (*Ibid.*)  " '[W]e examine the facts presented to the trial court and determine their effect as a matter of law.'  [Citation.]  We review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.'  [Citation.]  Evidence presented in opposition . . . is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

## 2. *Procedural Due Process*

Plaintiffs argue that the City's adoption and enforcement of Ordinance No. 18-005 violated their procedural due process rights because its selection of one of their licenses by lottery for nonrenewal denied them an opportunity to be heard on what they characterize as the deprivation of a vested right to continued renewal of their one-year licenses.  They base their argument on the theory that they enjoyed a vested right amounting to a property interest in the renewal of their licenses, such that nonrenewal

12

was effectively a deprivation of that interest. But plaintiffs fail to establish that they held any right—vested or otherwise—in the renewal of short-term rental licenses expressly limited in term, or that the City "revoked" any license granted; these failures are fatal to their claims.

Plaintiffs must establish a right to renewal because, generally, "[a] person seeking a benefit provided by the government has a property interest in the benefit for purposes of procedural due process only if the person has 'a legitimate claim of entitlement to it.' " (*Las Lomas*, *supra*, 177 Cal.App.4th at p. 853, fn. omitted.)

### a. *Legislative, Adjudicative, and Ministerial Acts*

Plaintiffs argue that the very adoption of Ordinance No. 18-005—by implementing a randomized process for selecting licenses that would not be renewed beyond the existing term, rather than affording licensees an opportunity to be heard as to the merits of their particular property usage—offended procedural due process.

As a threshold matter, however, "only those governmental decisions which are *adjudicative* in nature are subject to procedural due process principles. Legislative action is not burdened by such requirements." (*Horn v. County of Ventura* (1979) 24 Cal.3d 605, 612 (*Horn*).) While an adjudicative governmental action often "requires the procedural due process standards of reasonable notice and opportunity to be heard, . . . [l]egislative action generally is not governed by these procedural due process requirements because it is not practical that everyone should have a direct voice in legislative decisions . . . ." (*Calvert v. County of Yuba* (2006) 145 Cal.App.4th 613, 622 (*Calvert*).)

Plaintiffs contend that the application of the ordinance was necessarily adjudicatory because it applied to the Shirkeys' individual property. But not every nonlegislative action is adjudicative, and not every administrative decision requires a hearing. We do not infer a hearing right unless there is " 'some language' " in the operative legislation "from which such a requirement can be implied." (*Traverso v.*

13

*People ex rel. Dept. of Transportation* (1993) 6 Cal.4th 1152, 1164.) Nor may we disregard express language foreclosing such a hearing. (*Ibid.*) "[C]onstitutional notice and hearing requirements are triggered only by governmental action which results in 'significant' or 'substantial' deprivations of property, not by agency decisions having only a de minimis effect on land. Nor would action involving only the nondiscretionary application of objective standards entitle a landowner to such protections." (*Horn*, *supra*, 24 Cal.3d at p. 616.)

The random selection process under Ordinance No. 18-005 involved no exercise of discretion or judgment. It was therefore purely ministerial. (*Calvert*, *supra*, 145 Cal.App.4th at p. 622 [ministerial actions involve nondiscretionary decisions based only on fixed and objective standards].) Like legislative acts, ministerial acts are "not within this constitutional realm[,] . . . because ministerial decisions are essentially automatic based on whether certain fixed standards and objective measurements have been met." (*Id.* at pp. 622-623.)

To the extent that it is precisely the ministerial, nondiscretionary nature of the lottery that offends plaintiffs, we note that a random lottery removes the potential for illegitimate considerations—such as access to counsel to press one's claim, or to capital to expand the property—to influence the selection process, and, as the City notes, has long been recognized as a legitimate means of selection even where a substantial right is implicated. (See, e.g., *United States v. Steele* (9th Cir. 1972) 461 F.2d 1148, 1152 ["[m]ere random selection would suffice" as justification for prosecution of persons refusing to answer census questionnaires]; *McDonnell v. Hunter* (8th Cir. 1987) 809 F.2d 1302, 1308 [upholding random selection of correctional institution staff for drug testing]; *Geinosky v. City of Chicago* (7th Cir. 2012) 675 F.3d 743, 749 ["because officers must choose among violators, random selection is certainly rational" as a means of selecting parking violators for enforcement].) Accordingly, even if the reasonableness of the City's legislatively prescribed ministerial method of selection were properly subject to

14

our review, we would be unable to conclude random selection is, as a matter of law, an unreasonable method of accomplishing that goal.

### b.  *"Vested Rights"*

To circumvent these limitations on their procedural due process claims, plaintiffs assert that the nature of their interest in renewal of their licenses is a "vested right" that compels adjudicatory process.  Plaintiffs' characterization of their interest, however, depends on a misreading of the City's short-term rental regulatory scheme and a loose patchwork of mismatched authorities.

At the outset, we disregard as inapt plaintiffs' reliance on the doctrine of "fundamental vested rights" borrowed from administrative mandamus.[9]  In administrative mandamus proceedings under Code of Civil Procedure section 1094.5, "[t]he courts must decide on a case-by-case basis whether an administrative decision or class of decisions substantially affects fundamental vested rights and thus requires independent judgment review," as opposed to deference to agency findings.[10]  (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 144; *Interstate Brands v. Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 778; *JKH Enterprises, Inc. v. Department of Industrial Relations* (2006) 142 Cal.App.4th 1046, 1056-1057.)  "If the decision of an administrative agency will substantially affect a

---

[9] (See, e.g., *Goat Hill Tavern v. City of Costa Mesa* (1992) 6 Cal.App.4th 1519 [denial of application for renewal of conditional use permit by city council]; *Malibu Mountains Recreation, Inc. v. County of Los Angeles* (1998) 67 Cal.App.4th 359 [revocation of permit by regional planning commission]; *Bauer v. City of San Diego* (1999) 75 Cal.App.4th 1281 [denial of conditional use permit after administrative hearing]; *Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392 (*Berlinghieri*) [suspension of driver's license following hearing by DMV]; *Clerici v. Department of Motor Vehicles* (1990) 224 Cal.App.3d 1016 [denial of salesperson's license by DMV].)

[10] "[J]udicial review by [Code of Civil Procedure] section 1094.5 applies only to adjudicatory administrative action and not to action which is legislative in nature."  (*City of Rancho Palos Verdes v. City Council* (1976) 59 Cal.App.3d 869, 882.)

15

'fundamental vested right,' then the trial court must not only examine the administrative record for errors of law, but also must exercise its independent judgment upon the evidence." (*Berlinghieri*, *supra*, 33 Cal.3d at p. 395.) These authorities accordingly presuppose the existence of such a right and the administrative adjudication of that right under the operative regulatory scheme; they do not purport to confer or create rights or to impose the adjudicatory process plaintiffs seek. As a legislative act, the passage of Ordinance No. 18-005 set the rules for regulation of short-term rentals; in accordance with those rules, no adjudicatory determination was required, only the ministerial act of conducting the lottery. Consequently, the concept of a fundamental vested right has no application here.

In contrast, under the distinct "vested rights" doctrine relating to land use and development, a property owner acquires the irrevocable right to complete construction "notwithstanding an intervening change in the law that would otherwise preclude it." (*Whaler's Village Club v. California Coastal Commission* (1985) 173 Cal.App.3d 240, 252-253 [no "vested right" to construct sea wall for protection of dwelling, absent prior government approval to do so]; *McCarthy v. California Tahoe Regional Planning Agency* (1982) 129 Cal.App.3d 222, 230 (*McCarthy*).) "In short, a vested right for review purposes means a preexisting right while a vested right for construction means a right the government is estopped to deny." (*McCarthy*, *supra*, at p. 230.)

Plaintiffs suggest that they acquired a right to renewal of their licenses beyond the natural term by virtue of detrimental reliance on the issuance of one-year renewable licenses "by sacrificing thousands of dollars and numerous hours to improve and maintain the properties to offer" as short-term rentals. Detrimental reliance must at a minimum be reasonable to justify estopping the City from enforcement of the licenses' expressly limited term. (See *Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250, 1261.) Plaintiffs defend their preferred interpretation of the licensing scheme, asserting "[i]t is undisputed that [they] would have been entitled to the renewal of their

licenses upon the expiration of the twelve-month period, because the City itself considered [short-term rental] licenses to be 'ministerial and issued over the counter," "and [plaintiffs] never committed misconduct or violations that would have subjected them to revocation or nonrenewal." Not so. As the City noted in objecting to this assertion by Plaintiffs in their statement of undisputed facts, this assertion is "[m]aterially misleading." That issuance of licenses was "ministerial" did not entitle plaintiffs to renewal, given the citywide maximum of 250 and the density limits per block the City adopted as early as 2016.

Moreover, in viewing the record in the light most favorable to the City, as we must, the evidence before the trial court on summary adjudication did not establish such reliance on the issuance or renewal of short-term rental licenses, as opposed to the generic investment potential of residential real property, whether for long-term rental, for sale or for personal or family enjoyment.[11] The Shirkeys purchased and maintained their second home 10 years before the City ended its prohibition on short-term rentals, because they intended it for the use of their children and grandchildren; the Shirkeys rented it on a short-term basis only "in order to cover costs." Nothing in the plaintiffs' declarations endeavors to quantify what if any expenses they incurred solely as a consequence of specifically short-term rental expectations, as opposed to the general maintenance of their capital investment. Nothing in the plaintiffs' evidence establishes that the expenses were incurred after issuance of a license. (See *Avco Community Developers, Inc. v. South Coast Regional* (1976) 17 Cal.3d 785, 793 (*Avco*) [landowner's acts prior to issuance of permit could not have been undertaken in reliance on permit].) To the extent plaintiffs rely on *Avco* for the proposition that their good-faith reliance on the license confers a vested right in the license, what they overlook are the limitations on that vested right, as

---

[11] To the extent that the scope of plaintiffs' actual reliance is subject to dispute, plaintiffs by their voluntary dismissal elected to waive their right to litigate that factual issue at trial.

17

provided by the terms of the very license or permit at issue.  (*Id.* at p. 791, italics added ["Once a landowner has secured a vested right the government may not, by virtue of a change in the zoning laws, prohibit construction *authorized by the permit upon which he relied.*"].)

To be sure, the City, once it issued a short-term rental license, did not have authority to revoke that license prior to expiration of the contemplated one-year term absent notice to the licensee and an opportunity for the licensee to be heard.  (See, e.g., Ord. No. 10-001; Mun. Code, former § 7.40.180; Ord. No. 16-007; Mun. Code, former § 7.40.180; Ord. No. 17-024; Mun. Code, §§ 7.40.060(g) & 7.40.090.)  But to the extent that this limitation on the City's revocation authority could be said to "vest" plaintiffs' right to the license, such a right is limited to the express terms and conditions of the license, including the applicable expiration date.  (*Metropolitan Outdoor Advertising Corp. v. City of Santa Ana* (1994) 23 Cal.App.4th 1401; *Avco*, *supra*, 17 Cal.3d at p. 791 [developer's vested right is "to complete construction in accordance with the terms of the permit"].)  The process due to a licensee facing revocation of an existing license therefore has no bearing on whether a license expiring on its express terms must thereafter be renewed.

### 3.      *Substantive Due Process*

For substantive due process purposes, plaintiffs have variously asserted as fundamental their "right to allow guests to stay in their home," and "right to rent their homes to overnight guests."  Countenancing plaintiffs' claim that Ordinance 18-005 violates their right to substantive due process by infringing on their right to invite guests into their homes would breach the already narrow and now shrinking boundaries of the doctrine.  The " 'substantive' " component of the Due Process Clause protects rights that "are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental,' and therefore cannot be deprived without compelling justification." (*Obergefell v. Hodges* (2015) 576 U.S. 644, 694-695 (*Obergefell*); cf. *Dobbs v. Jackson*

18

*Women's Health Org.* (2022) ___U.S.___ [142 S.Ct. 2228, 2247, 213 L.Ed.2d 545, 565] [directing that we "guard against the natural human tendency to confuse what that Amendment protects with our own ardent views about the liberty that Americans should enjoy"].)

First, we reject plaintiffs' effort to frame their issue as one of associational freedom, where the short-term relationships previously negotiated via plaintiffs' property manager were plainly not of the social type. Ordinance No. 18-005 merely prevents them from operating as a commercial innkeeper in a residential district. Nothing in the record reflects any infringement of plaintiffs' right to entertain guests, host overnight visitors, or rent the premises for periods of 30 days or more. Plaintiffs cite no authority for the proposition that their economic preference for short-term over long-term rental income is " 'implicit in the concept of ordered liberty' " such that strict scrutiny is warranted. (See *Obergefell*, *supra*, 576 U.S. at 698.)

As to the limited infringement on plaintiffs' economic use of their property, "[l]and use regulation in California historically has been a function of local government under the grant of police power contained in article XI, section 7 of the California Constitution." (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1151.) "This inherent local police power includes broad authority to determine, for purposes of the public health, safety, and welfare, the appropriate uses of land within a local jurisdiction's borders . . . ." (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 738.) "[C]ourts generally have emphasized the breadth of municipal power to control land use and have sustained the regulation if it is rationally related to legitimate state concerns and does not deprive the owner of economically viable use of his property." (*Schad v. Borough of Mount Ephraim* (1981) 452 U.S. 61, 68.) "A law regulating or limiting the use of real property for the public welfare does not violate substantive due process as long as it is reasonably related to the accomplishment of a legitimate governmental interest." (*Terminal Plaza Corp. v. City*

*and County of San Francisco* (1986) 177 Cal.App.3d 892, 908.) This is because "in the substantive due process realm, it is not the extent of the burden to be borne by the landowner that is the focus of the inquiry. It is rather the reasonableness of the government regulation or exercise of police power and the rational relationship of the regulation or action to a government purpose." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 266.)

Arguing for strict scrutiny rather than rational basis review, plaintiffs assert that their "vested right"—for which we have found neither doctrinal nor evidentiary support—may be infringed only upon a showing of "a compelling public necessity." For this, they rely on a misapplication of *O'Hagen v. Board of Zoning Adjustment* (1971) 19 Cal.App.3d 151. Plaintiffs misread *O'Hagen* as entitling them to renewal of licenses they expressly acknowledged were term-limited, when *O'Hagen* in fact addressed the revocation on nuisance grounds of an existing, *permanent* use permit originally issued for the construction years earlier and the continued operation of a Burger King. (*Id.* at p. 158.) Because the right at issue in *O'Hagen* was legitimately a vested one, the requirement there of "compelling public necessity" provides no support for importing the same level of scrutiny here.

Alternatively, plaintiffs contend that the City's findings were inadequate to satisfy even rational basis review. But "[a] legislative act is presumed valid, and a city need not make explicit findings to support its action." (*Federation of Hillside & Canyon Assns. v. City of Los Angeles* (2004) 126 Cal.App.4th 1180, 1195.) "When considering a statute under the rational basis test, we acknowledge a statute bears a strong presumption of validity. The test is extremely deferential and we do not inquire into the wisdom of governmental action. Nor do we assess the wisdom, fairness, or logic of legislative choices." (*American Coatings Assn., Inc. v. State Air Resources Bd.* (2021) 62 Cal.App.5th 1111, 1132.)

20

After it began licensing short-term rentals in residential zones in 2010, the City found that its regulations failed to anticipate the proliferation of "online host sites such as VRBO, Airbnb and others," "a dramatic increase in license applications," and "the surge in short-term rental activity." (Ord. No. 16-007.) Pacific Grove over time imposed limits on short-term rentals "to address negative impacts on the quality and character of the City's residential neighborhoods and on the availability and affordability of housing" and "protect the public health, safety, and welfare." (Ord. No. 17-024.) In furtherance of that objective, when the number and density of distributed licenses otherwise resisted reduction, the City enacted Ordinance No. 18-005 to address density in "over-dense blocks."

The City's stated interest echoes what an earlier panel of this court upheld in *Ewing v. City of Carmel-By-The-Sea* (1991) 234 Cal.App.3d 1579. As with the zoning ordinance there at issue, Ordinance No. 18-005 left the plaintiffs with several economically viable uses of their property—live in the homes, allow guests to use the homes without remuneration, rent the homes for periods of at least 30 days, or sell their homes. (See *id.* at p. 1592.) The "intrusion into plaintiffs' bundle of ownership rights … is minimal and far outweighed by the public interest in enhancing and maintaining permanent residential areas." (*Ibid.*) "It stands to reason that the 'residential character' of a neighborhood is threatened when a significant number of homes . . . are occupied not by permanent residents but by a stream of tenants staying a weekend, a week, or even 29 days." (*Id.* at p. 1591.) "Limiting transient commercial use of residential property for remuneration" addresses the goal of enhancing and maintaining the residential character of a neighborhood. (*Id.* at p. 1596.) Because the ordinance is rationally related to the

21

City's goal of enhancing and maintaining its residential character, it was not so clearly arbitrary and unreasonable as to offend substantive due process.[12] (*Id.* at pp. 1592, 1596.)

### III. DISPOSITION

The order of dismissal as to count 2 is affirmed. The City's cross-appeal is dismissed as moot, and the trial court is directed to dismiss count 1. Costs on appeal are awarded to the City.

---

[12] Given the nature of the substantive due process inquiry, plaintiffs' record of performance as licensees is immaterial to the legitimacy of the government purpose in reducing the total number and density of licenses.

22

_____

LIE, J.

WE CONCUR:

_____

DANNER, ACTING P.J.

_____

WILSON, J.

*Hobbs et al. v. City of Pacific Grove et al.*
H047705

Filed 11/14/22

**CERTIFIED FOR PARTAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WILLIAM HOBBS et al., | H047705 |
| Plaintiffs and Appellants, | (Monterey County Super. Ct. No. 18CV002411) |
| v. | ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR |
| CITY OF PACIFIC GROVE et al., | PARTIAL PUBLICATION [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

THE COURT:

It is ordered that the opinion filed herein on October 14, 2022, be modified as follows:

1. On page 15, line 9, the word "doctrine" is changed to "treatment" and on line 10 the words "borrowed from" are changed to "in" so the sentence reads:

At the outset, we disregard as inapt plaintiffs' reliance on the treatment of "fundamental vested rights" in administrative mandamus.

2. On page 16, line 3, after the citation "(*Berlinghieri*, *supra*, 33 cal.3d at p. 395.)" delete the sentence beginning with "These authorities" and ending with "plaintiffs seek" and insert the following sentence:

In determining the scope of judicial review of such adjudicatory agency decisions, these authorities do not purport to confer or create rights to the adjudicatory process plaintiffs seek.

3. On page 16, line 9 the sentence beginning with "Consequently" and ending in "application here" is deleted.

There is no change in the judgment.

The opinion in the above-entitled matter filed on October 14, 2022, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be partially published in the Official Reports.

Under California Rules of Court, rules 8.1105(c) and 8.1110, the opinion is ordered published in part.

The portions of the opinion certified for publication are the first introductory paragraph on page 1, and sections I, II(B), and III.

Section II(A) is not certified for publication.

It is so ordered.

_____

                                                                LIE, J.


_____

DANNER, ACTING P.J.




_____

WILSON, J.

*Hobbs et al. v. City of Pacific Grove et al.*
H047705

| | |
|---|---|
| Trial Court: | Monterey County Superior Court |
| | Superior Court No.:  18CV002411 |
| | |
| Trial Judge: | The Honorable Lydia M. Villareal |
| | |
| Attorneys for Plaintiffs and Appellants | Scharf-Norton Center for Constitutional |
| William Hobbs et al.: | Litigation at the Goldwater Institute |
| | Timothy Sandefur |
| | Christina Sandefur |
| | |
| Attorneys for Defendants and Respondents | De Lay & Laredo |
| City of Pacific Grove et al.: | David C. Laredo |
| | |
| | Colantuono, Highsmith & Whatley, PC |
| | David J. Ruderman |
| | |
| Attorneys for Amicus Curiae for | Shute, Mihaly & Weinberger LLP |
| Pacific Grove Neighbors United: | Robert "Perl" Perlmutter |
| | Andrew P. Miller |
| | |
| Attorneys for Amicus Curiae for | Best Best & Krieger LLP |
| League of California Cities | Trevor L. Rusin |
| Emily S. Chaidez | |

*Hobbs et al. v. City of Pacific Grove et al.*
H047705